**NOT FOR PUBLICATION**

**FILED**
JAMES J. WALDRON, CLERK

**MARCH 31, 2009**

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY:  s/ Ronnie Plasner, DEPUTY

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **In Re: EDWARD LEV**<br><br>                    Debtor. | Case No.:   05-35847 (DHS)<br><br>Adv. No.:   08-02980 (DHS)<br><br>Judge: Donald H. Steckroth, U.S.B.J. |
| **GARY S. JACOBSON, CHAPTER 7 TRUSTEE FOR EDWARD LEV,**<br><br>                    Plaintiff<br><br>             v.<br><br>**JOHN KIM and KYOUNGA KIM, JOHN DOES 1-10 AND JANE ROES 1-10,**<br><br>                    Defendants. | |

**OPINION**

**APPEARANCES:**

Trenk, DiPasquale, Webster, Della Fera & Sodono, P.C.
Richard D. Trenk, Esq.
Joshua H. Raymond, Esq.
Scott J. Koplik, Esq.
347 Mount Pleasant Avenue
Suite 300
West Orange, New Jersey 07052
***Special Counsel for Gary S. Jacobson,***
 ***Chapter 7 Trustee for Debtor Edward Lev***


Robertson, Freilich, Bruno & Cohen LLC
James A. Scarpone, Esq.
Andrew S. Zimmerman, Esq.
The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102
***Counsel for Defendants***
 ***John and Kyounga Kim***

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court is an order to show cause filed by Gary S. Jacobson, Chapter 7 Trustee ("Trustee") for Edward Lev ("Debtor"), to obtain a preliminary injunction enjoining John Kim and Kyounga Kim (collectively referred to as the "Defendants" or "Kims") from selling and/or transferring their ownership interest in real property located at 5 William Street, Harrington Park, New Jersey ("Property") and from disbursing any funds currently held in escrow pending or resulting from a sale of the Property. The Kims filed opposition to the Trustee's order to show cause and simultaneously cross-moved for summary judgment seeking dismissal. Both parties filed replies in further support of their positions and the Court heard oral argument.

For the reasons stated hereafter, the Trustee's order to show cause to obtain a preliminary injunction is granted and the Defendants' cross-motion for summary judgment is denied without prejudice. The Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (H). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

**Statement of Facts and Procedural History**

**I.     Trustee's Statement of Facts**

John and Kyounga Kim were married in 1995 and reside at the Property at issue. *Verified Compl.,* 08-2980 (DHS) *("Verified Compl."),* at Ex. G. Kyounga Kim has largely been unemployed since she arrived in the United States in 1995. *Id.* She temporarily worked as a receptionist in 2000 and at Bloomingdale's in 2006. *Id.* John Kim was employed by Encompass Medical, earning a salary of less than $100,000. *Id.* Encompass Medical is an entity owned and operated by Edward Lev, the

3

Debtor.[1] From 2006 through the present, John Kim has been employed by Benzel-Busch Mercedes Benz Motor Corp in Englewood, New Jersey, earning approximately $100,000.00 per year and bonuses. *Id.*

Kyounga Kim opened a Bank of America account with a deposit of $95,000.00 on October 12, 2004. *Id.* at Ex. H. Thereafter, on October 27 and November 23, 2004, Kyounga Kim paid $63,500.00 as a deposit to the seller of the Property. *Id.* at Ex. I. The closing took place on December 24, 2004, at which time Kyounga Kim executed certain documents to purchase the Property for $635,000.00 and granted a mortgage on the Property to Washington Mutual Bank, N.A. for $385,000.00. *Id.* at Exs. J & K. Kyounga Kim paid $188,681.21 at the closing, according to the HUD-1 Settlement Statement. *Id.* at Ex. M. During her deposition, Kyounga Kim testified that she had borrowed money from her mother-in-law, Fay Lim, to fund the purchase of the house. However, there is no documentation to verify such transfers and Kyounga Kim had no recollection of a $95,000.00 transfer. *Id.* at Ex. G. In addition, Kyounga Kim stated that John Kim transferred $1700.00 weekly from his bank account to Kyounga Kim's account to pay various household bills including the mortgage. *Id.* at Ex. F. The monthly mortgage payment is $2,156.00. *Id.* Furthermore, also on December 24, 2004, Fay Lim transferred $149,630.69 to John Kim's JP Morgan Account with the notation "Gift 2004." *Memorandum of Law in Further Support of Trustee's Order to Show Cause Seeking a Preliminary Injunction and in Opposition to Defendants' Cross-Motion for Summary Judgment ("Trustee's Further Support")*, 7. However such transfer was not mentioned in the certifications or during deposition testimony. *Id.*

---

[1] The Debtor, a licensed physician in the State of New Jersey, filed for voluntary Chapter 7 bankruptcy protection in August 2005.

The Trustee commenced an adversary proceeding against the Defendants and others on November 14, 2006 seeking to avoid and recover pre-petition transfers. *Id.* at ¶ 4. In that complaint, the Trustee alleged that John Kim personally issued checks to himself and his wife, Kyounga Kim, in excess of $45,000.00, charged his corporate credit card for personal expenses, and authorized payments from the Debtor's checking accounts for his personal car loans and legal fees. *See Trustee v. Bruce Jacobson, et. al.,* 06-2945 (DHS) *("Jacobson Compl."),* ¶¶ 20-25. The Trustee also asserted that Kyounga Kim accepted payments from the Debtor's accounts. *Id.* The Defendants failed to plead or otherwise defend and thus Entry of Default occurred on March 19, 2007. *Verified Compl.* ¶¶ 7-8. The Court conducted a proof hearing on April 17, 2008 and thereafter entered default judgment against John Kim in the amount of $145,827.00 and against Kyounga Kim in the amount of $44,000.00. *Id.* at ¶¶9-12.

On or about August 6, 2008, the Trustee domesticated the judgments in New Jersey. *Id.* at ¶ 13; Ex. C. On September 18, 2008, the Defendants were deposed. *Id.* at ¶15. On December 11, 2008, Defendants' counsel indicated that the Kyounga Kim judgment would be fully satisfied. *Id.* at ¶ 17; *see also Cert. of Joshua H. Raymond, Esq. in Support of Preliminary Injunction.* During the time that the Trustee issued Information Subpoenas and took deposition testimony in connection with the default judgments, the Trustee learned that the Kims possessed additional bank accounts not originally mentioned, including one in the name of their daughter, Haley. *Trustee's Further Support*, 9-10, 13. Furthermore, in response to a subpoena issued to the Kims' closing attorney, Alan Siegel, Esq., Siegel states the name Kyounga Kim does not appear in his records and he is unfamiliar with the name. *Id.* at 12.

When payment in satisfaction of the Kyounga Kim Judgment was not received after several conversations between counsel, the Trustee filed the instant adversary complaint on December 12, 2008 seeking to avoid and recover fraudulent transfers, a constructive trust over real property, a declaratory judgment as to ownership of the Property, and damages from fraud and unjust enrichment. At oral argument, counsel for the Defendants alleged that payment was never transferred due to the filing of the instant adversary complaint and application for a preliminary injunction. *See Jan. 29, 2009 Hrg. Tr. __:___.*

## II.   Defendants' Statement of Facts

The factual statement included in the Defendants' motion for summary judgment fails to detail the underlying facts at issue and instead summarizes the adversary complaint and the Defendants' arguments against it. However, the certifications in support of the motion for summary judgment provide additional facts.

Defendant John Kim's employment with Encompass Medical Group ended in Spring 2004. *John Kim's Cert. in Support of Mot. For Summ. Judgment and Certain Other Relief ("John Kim Cert.")* ¶ 2. Thereafter, he was unemployed for seventeen months except for a three-month period when he was employed by Manhattan Lexus. *Id.* at ¶ 3. He then worked for Mercedes Benz of Long Island City until April 2006. *Id.* From April 2006 through the present, he has been employed by Benzel-Busch Mercedes. *Id.* at ¶ 4.

In Fall 2004, Fay Lim, John Kim's mother, gave Kyounga Kim approximately $100,000 to be used as a down payment to purchase a house for John, Kyounga, and their daughter, Haley. *Fay Lim Cert. In Supp. Of Mot. For Summ. Judgment and Certain Other Relief ("Fay Lim Cert.")* ¶ 2. In December 2004, Kyounga Kim purchased the Property where the family resides for $635,000.00.

6

*Id.* at ¶ 3; *John Kim Cert.* at ¶ 6. Fay Lim typically resided at the Property for approximately six months of the year and spent the balance of the year with her other son. *Fay Lim Cert.* at ¶ 4; *John Kim Cert.* at ¶¶ 7, 17. Between the time Kyounga Kim purchased the home and when John Kim began working again in September 2005, Fay Lim provided them with the funds necessary to maintain the home. *Fay Lim Cert.* at ¶ 5.

Additionally, John Kim's father, Chun Soo Kim, gave Kyounga Kim a condominium that he owned, which she then sold to a third party for $209,000.00. *John Kim Cert.* at ¶¶ 10-11. Kyounga Kim received a net disbursement of $177,000.00 on September 2, 2004. *Id.* at ¶ 12. This disbursement coupled with the $100,000.00 from Fay Lim provided Kyounga with the funds for the down payment on the Property. *Id.* at ¶¶ 13-14. Kyounga borrowed the balance of the purchase price, $385,000.00, from Washington Mutual. *Id.* at ¶ 15.

John Kim certifies that the reason his parents provided Kyounga Kim with the funds to purchase the Property was because of his past gambling problems and poor credit score. *Id.* at ¶ 16. The Kims and John Kim's parents mutually agreed that it was most prudent for Kyounga Kim to purchase the home in her name and for the funds to be out of John Kim's reach. *Id.* John Kim avers that he deposits between $1,500.00 and $1,700.00 from his earnings weekly into a checking account maintained by Kyounga Kim to which he has no access or capability of making withdrawals. *Id.* at ¶ 20. John Kim maintains that the family finances are so structured due to his gambling problems and Kyounga's responsibilities as a housewife that include management of financial affairs. *Id.* at ¶ 21. These funds are used for household maintenance and carrying costs for the family. *Id.* at ¶ 22.

**Discussion**

**I.        Trustee's Request for Injunctive Relief**

The relief requested by the Trustee stems from the bankruptcy court's equitable powers pursuant to § 105(a) of the Bankruptcy Code. Section 105(a) of the Code provides in relevant part: "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a) (2008). Included in this provision is the power to issue injunctions under appropriate circumstances. *In re Otero Mills, Inc.*, 21 B.R. 777, 778 (Bankr. D.N.M.), aff'd, 25 B.R. 1018 (D.N.M. 1982).

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *St. Thomas-St. John Hotel & Tourism Assoc., Inc. v. U.S. Virgin Islands*, 357 F.3d. 297, 301 (3d Cir. 2004) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). A party seeking a preliminary injunction must show that (1) it has a likelihood of success on the merits, (2) it will suffer irreparable harm if the injunction is denied, (3) granting preliminary relief will not result in even greater harm to the nonmoving party, and (4) the public interest favors such relief. *Rogers v. Corbett*, 468 F.3d 188, 192 (3d Cir. 2006) (citations omitted); *In re Univ. Med. Ctr.*, 82 B.R. at 757 (citing *Delaware River Port Auth. v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 919-20 (3d Cir. 1974)); *see also Marxe v. Jackson*, 833 F.2d 1121, 1125-29 (3d Cir. 1987); *see ACLU of New Jersey v. Black Horse Pike Reg'l Bd. Of Educ.,* 84 F.3d 1471, 1477 (3d Cir. 1996). The first two factors are mandatory and must be present for the Court to issue a preliminary injunction. *Medical Marketing Consultants, LLC v. Cardiac Telecom Corp.*, 2007 U.S. Dist. LEXIS 48406, at * (W.D. Pa., May 31, 2007).

The Trustee bears the burden of demonstrating the four factors described above in order to obtain a preliminary injunction. The Trustee contends that the preliminary injunction would maintain the status quo by enjoining the Kims from transferring or selling the Property. He argues that he would likely succeed on the merits as the Kims themselves have admitted the transfers from John to Kyounga are used for mortgage payments, and thus, he would be able to impose a constructive trust on the Property and obtain a declaratory judgment as to John Kim's ownership of the Property. The Trustee further argues that he would suffer irreparable harm if the Kims are given the ability to transfer the Property as there would be no source to satisfy the existing judgments against them. Conversely, the Kims will not suffer greater harm while awaiting the determination of ownership of the Property. If it is determined that John Kim does not have an ownership interest, the Kims' present position will be maintained. Lastly, the Trustee submits that maintaining the status quo is in the public interest as there exists a potential transfer or concealment of assets to avoid creditors.

The Kims did not put forth a clear argument in opposition to the imposition of a preliminary injunction. Instead, they filed a cross-motion for summary judgment as to the validity of the complaint on the grounds that it is time-barred and fails to state a claim. The crux of the controversy here is whether John Kim has an ownership interest in the Property due to utilization of funds transferred by him to Kyounga Kim, his wife and the owner of record, to maintain the home, including payment of the mortgage. Before addressing the merits of the parties' dispute and the cross-motion for summary judgment, the Court must first determine whether a preliminary injunction is appropriate.

9

It is clear that the Trustee has met his burden here for the imposition of a preliminary injunction. A court can grant a preliminary injunction to prevent the dissipation of assets that would satisfy a judgment. *See Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 198 (3d Cir. 1990); *see also Chicago Title Ins. Co. v. Lexington & Concord Search & Abstract,* LLC, 513 F. Supp. 2d 304, 319 (E.D. Pa. 2007) ("[T]o obtain such relief, the plaintiff must show not only that it is likely to become entitled to the encumbered funds upon final judgment, but also that without the preliminary injunction, the plaintiff will probably be unable to recover those funds.") (citing *Hoxworth*, 903 F.2d at 197). The Trustee has already obtained and domesticated judgments against the Kims and is now attempting to satisfy those judgments for the benefit of the Debtor's creditors. The harm that the Trustee would suffer upon a transfer of the Property is greater than that suffered by the Kims if the status quo is maintained since the Trustee would face an inability to recover on the judgments. *But cf. Todi v. Stursberg*, 2001 U.S. Dist. LEXIS 11270, at *18-20 (E.D. Pa. Aug. 1, 2001) ("[A]lthough plaintiff has established some commingling of assets, and substantial evidence of poor record-keeping, extraordinary injunctive relief is not warranted in a case such as this where plaintiff has an adequate remedy at law in the form of a money judgment. Thus far, plaintiff has not presented any evidence to demonstrate that the money judgment he seeks would be unsatisfiable."). The Court will grant the preliminary injunction enjoining the Kims from any disposition of the Property.

**II.     Defendants' Cross-Motion for Summary Judgment**

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." *Id.* At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The court must construe facts and inferences in a light most favorable to the non-moving party. *See Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)). "Only evidence admissible at trial may be used to test a summary judgment motion. Thus, evidence whose foundation is deficient must be excluded from consideration." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party must make an initial showing that there is no genuine issue of material fact. *See Knauss*, 289 F. Supp. 2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party to "'make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir. 2001) (questioned on other grounds) (quoting *Celotex Corp.*, 477 U.S. at 322). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party. *See id.* at 248. Furthermore, a material fact is determined by the substantive law at issue. *See Crane v. Yurick*, 287 F. Supp. 2d 553, 556 (D.N.J. 2003) (citing *Anderson*, 477 U.S. at 248). A fact is "material" if it might affect the outcome of the suit under

11

governing law. *Id.* Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 248 (citation omitted).

However, even if material facts remain disputed, summary judgment may be proper if, after all inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment as a matter of law. *Id.* at 248-50. Such a judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof. *See Celotex Corp.*, 477 U.S. at 322-23. When one party moves the court for summary judgment, Federal Rules of Civil Procedure 54(c) and 56, taken together, permit the court to enter summary judgment on behalf of the non-movant, even if the non-movant has not filed a cross-motion for summary judgment. *See Peiffer v. Lebanon Sch. Dist.*, 673 F. Supp. 147, 151-52 (M.D. Pa. 1987) (citation omitted). On the other hand, a court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to a judgment as a matter of law.

Local Civil Rule 56.1 requires each side to "furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue." L. CIV. R. 56.1. Failure to file this statement is grounds for denial alone. *See In re Mercedes-Benz Antitrust Litig.*, 364 F. Supp. 2d 468, 471-75 (D.N.J. 2005); *Comose v. N.J. Transit Rail Operations, Inc.*, 2000 U.S. Dist. LEXIS 20790, at *4 (D.N.J. Oct. 6, 2000). However, if there is no evidence of bad faith, then it is within the court's discretion to overlook such failure and to decide the motion on the merits. *See Rosenberg v. JCA Assocs.*, 2007 U.S. Dist. LEXIS 23570, at *31-32 (D.N.J. Mar. 30, 2007). Although both parties to the instant motions failed to comply with Local Civil Rule 56.1, they did provide orderly recitations of the facts at hand in their briefs. Therefore, this Court will exercise its discretion and will decide

the motion. *See Kee v. Camden County*, 2007 U.S. Dist. LEXIS 23637, at *16 (D.N.J. March 30, 2007) ("[T]he Court, having found no evidence of bad faith, concludes that both parties were equally lax in their compliance with the Local Civil Rules,. . .and the Court [finds] it in the best interest of the parties and justice to adjudicate Defendant's motion. . . .").

Based upon the briefs and the oral argument in the instant matter, it is abundantly clear that material issues of fact exist. Among the issues raised by the Trustee's adversary complaint, the main disputed issue is whether a constructive trust may be imposed due to fraudulent transfers executed by the Kims. The arguments raised by the Trustee in his motion papers and at oral argument evidenced an intricate network of monetary transfers that require further investigation and discovery.

As argued by the Trustee, *In re Blatstein* is particularly instructive. In that case, 718 Arch Street commenced adversary proceedings against Eric Blatstein to recover fraudulent transfers of his income and corporate shares to his wife, Lori Blatstein. *718 Arch St. Assocs., Ltd. v. Blatstein (In re Blatstein)*, 192 F.3d 88, 92 (3d Cir. 1999). Lori Blatstein testified that the couple had opened a personal bank account in her name and deposited Eric Blatstein's income into such account due to his "bad" reputation and to avoid a federal tax lien on Eric Blatstein's assets. *Id.* at 95. The Bankruptcy Court ruled that this conduct did not evidence actual intent to defraud creditors under Pennsylvania law due to ownership of property as tenants by the entirety. *Id.*

718 Arch Street appealed and the Third Circuit held that the income earned by Eric Blatstein for services provided was transferred to Lori Blatstein and it did not take the form of dividend or equity distributions from the corporations. *Id.* at 97. The appellate court also focused on the findings of the Bankruptcy Court that Eric Blatstein deposited his income into Lori Blatstein's accounts due to his poor credit and reputation with the banks and because he was trying to keep assets from being

13

frozen due to an Internal Revenue Service lien. *Id.* The court determined that these findings "clearly demonstrate that despite the payment of some taxes, [Eric] Blatstein intended to defraud the Internal Revenue Service, one of his creditors." *Id.* In addition, in Lori Blatstein's pre-trial deposition, she admitted that the "Arch judgment was a factor" in the couple's decision to transfer Eric Blatstein's income into her accounts. *Id.* at 98 n.5. Thus, the Third Circuit disagreed with the Bankruptcy Court's finding that Eric Blatstein lacked actual intent to defraud creditors. *Id.* at 98. The Third Circuit stated that the Bankruptcy Court also erred in placing the sole burden of proof on Eric Blatstein to demonstrate that Lori Blatstein had given reasonably equivalent value for the income deposits into her account. *Id.* Instead, Lori Blatstein should have proved that she provided reasonable consideration. *Id.*

Based upon the Third Circuit precedent in *Blatstein*, it is clear that the transfer of funds between a husband and wife may, in view of all the circumstances to be considered, provide evidence of actual intent to defraud creditors. In the instant matter, John Kim transferred a portion of his income to Kyounga Kim for the mortgage payments and maintenance of the Property allegedly because of his gambling problems. These transfers appear to pre-date the Trustee's default judgment against the Kims. However, there are questions of fact as to the intent behind the transfers and whether there was an effort by the couple to avoid creditors. Income shifting of this type may provide a basis for a constructive trust. Thus, the Trustee must be provided with the opportunity to further investigate his allegations against the Kims and obtain discovery and deposition testimony as to the transfers made between and among John Kim, Kyounga Kim, and John Kim's parents. Since issues of fact exist, the Defendants' cross-motion for summary judgment is hereby denied without prejudice.

### **Conclusion**

The Trustee's request for a preliminary injunction enjoining the Defendants from transfer or disposition of the Property is hereby granted. The Defendants' cross-motion for summary judgment is hereby denied without prejudice. An Order was entered on January 30, 2009 memorializing the resolution of the Order to Show Cause and the Cross-Motion for Summary Judgment as stated in the above Opinion.

/s/ *Donald H. Steckroth*
_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: March 31, 2009